UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT EDWARD HAGER, et al.,<br><br>   Plaintiffs,<br><br>       v.<br><br>FEDERAL NATIONAL MORTGAGE<br>ASSOCIATION, et al.,<br><br>   Defendants. | Civil Action No. 11-2090 (JDB) |

## MEMORANDUM OPINION

Robert E. Hager and Andrew Ludel ("plaintiffs") brought this qui tam action on behalf of the District of Columbia under the D.C. False Claims Act ("D.C. FCA"). Federal National Mortgage Association ("Fannie Mae"), Federal Loan Mortgage Corporation ("Freddie Mac," and, together with Fannie Mae, the "Enterprises"), and Intervenor-Defendant Federal Housing Finance Agency ("FHFA") in its capacity as Conservator (collectively, "defendants"), have filed a motion to dismiss [Docket Entry 17]. Defendant Wells Fargo Home Mortgage, Inc. has joined the motion [Docket Entry 19]. For the reasons set forth below, defendants' motion to dismiss will be granted.

### I. Background

D.C imposes a tax ("recordation tax") when "[a] deed that conveys title to real property" or "a security interest instrument is submitted for recordation." D.C. Code § 42-1103(a)(1)(A), (3). The recordation tax is an excise tax: it is "levied upon the use or transfer of property," unlike

1

a direct tax "levied upon the property itself." See United States v. Wells Fargo Bank, 485 U.S. 351, 355 (1988); see also Second Am. Compl. [Docket Entry 1-2] ¶ 10 ("these obligations are considered excise taxes, levied upon the transfer and perfection of real property interests . . . [t]hey are not a tax directly upon the property itself").

Plaintiffs allege that when filing documents with the D.C. Recorder's Office, defendants falsely claimed to be exempt from the recordation tax, knowingly invoking exemptions to which they were not entitled. Second Am. Compl. ¶ 26; see also id. at 1-2. In their opposition to defendants' motion, plaintiffs further allege that the Enterprises paid recordation and transfer taxes in other states. Pls.' Opp'n to Mot. to Dismiss (Feb. 21, 2012) [Docket Entry 23] at 14 ("Pls.' Opp'n").

Plaintiffs filed this qui tam complaint in D.C. Superior Court, alleging that defendants' actions violate the D.C. FCA, D.C. Code §§ 2-381.01 et seq.[1] On March 8, 2011, plaintiffs filed a second amended complaint. Defendants removed this action to federal court on November 23, 2011, and filed this motion to dismiss on January 13, 2012. This Court subsequently granted FHFA's motion to intervene. The District of Columbia has not notified the Court of its intent to intervene in this action.

Plaintiffs had filed a similar action in the U.S. District Court for the District of Nevada under Nevada's False Claims Act. That court dismissed plaintiffs' action. See Nevada ex rel. Hager v. Countrywide Home Loans Servicing, LP, 812 F. Supp. 2d 1211, 1220 (D. Nev. 2011).

## II. Standard of Review

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over

---

[1] The D.C. FCA was recently renumbered without substantive amendments. This opinion reflects the current section numbers rather than those the parties cite.

the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that may be drawn from the allegations of fact. See Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court—plaintiffs here—bears the burden of establishing that the court has jurisdiction. See US Ecology, Inc. v. U.S. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (omission in original) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis.,

974 F.2d 192, 197 (D.C. Cir. 1992).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).

### III.  Discussion

#### 1. Subject Matter Jurisdiction

Defendants first seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. They contend that whether a qui tam relator is barred from proceeding under the public disclosure bar is a jurisdictional question. While that question is, indeed, jurisdictional under the federal False Claims Act, see Rockwell Int'l Corp. v. United States, 549 U.S. 457, 467 (2007), the similar provision in the D.C. FCA, at issue here, establishes an element of the plaintiffs' claim for relief rather than a jurisdictional requirement. "[O]nly Congress may determine a lower federal court's subject-matter jurisdiction." Bowles v. Russell, 551 U.S. 205,

211 (2007) (internal quotation marks omitted). The D.C. Council thus could not impose a jurisdictional bar to suit in federal court. Nor did it purport to do so: while the version of the federal statute interpreted in Rockwell spoke in jurisdictional terms, see Rockwell Int'l Corp., 549 U.S. at 467 ("'[n]o court shall have jurisdiction over an action [that runs afoul of the public disclosure bar]'" (quoting 31 U.S.C. § 3730(e)(4)(A) (2006))), the D.C. statute says nothing about a court's power, see D.C. Code § 2-381.03(c)(2)(A) ("[n]o person may bring an action pursuant to subsection (b) of this section based upon [public disclosures]"); cf. Jones v. Bock, 549 U.S. 199, 211-12 (2007) (requirement that "[n]o action shall be brought . . . by a prisoner . . . until such administrative remedies as are available are exhausted" is nonjurisdictional affirmative defense).

The public disclosure bar of the D.C. FCA, if applicable, would warrant Rule 12(b)(6) dismissal rather than dismissal under Rule 12(b)(1). Hence, this Court has jurisdiction to proceed.

### 2. Failure to State a Claim

Defendants argue for dismissal on an array of grounds. The Court need reach only one: whether the Enterprises are in fact exempt from the recordation tax. Because the Court concludes that they are exempt, plaintiffs' action must fail.

Plaintiffs' core claim is a "reverse false claim" action under D.C. Code § 2-381.02(a)(7). In a reverse false claim action, "the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated." Hoyte v. Am. Nat'l Red Cross, 518 F.3d 61, 63 n.1 (D.C. Cir. 2008) (internal quotation marks omitted) (discussing materially identical provision of federal False

5

Claims Act). The D.C. FCA authorizes damages against a person who "[k]nowingly makes or uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the District." D.C. Code § 2-381.02(a)(7).[2] To prevail under this provision, plaintiffs must, among other things, allege "a false record or statement" by the defendants. The only false statements plaintiffs allege are defendants' statements that each is "exempt from paying Transfer tax" under various sections of the U.S. Code. And the only "obligation to pay" the District of Columbia that plaintiffs identify is an obligation to pay this tax. Hence, if defendants' statement that they are exempt is true, plaintiffs' suit must fail.

Defendants maintain that federal statutes exempt them from all taxation. Fannie Mae's charter provides:

> The corporation, including its franchise, capital, reserves, surplus, mortgages or other security holdings, and income, shall be exempt from all taxation now or hereafter imposed by any State, territory, possession, Commonwealth, or dependency of the United States, or by the District of Columbia, or by any county, municipality, or local taxing authority, except that any real property of the corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent as other real property is taxed.

12 U.S.C. § 1723a(c)(2). Freddie Mac's charter contains a substantially similar exemption, providing that "[t]he Corporation, including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed . . . by any State," excepting taxation of "real property." 12 U.S.C. § 1452(e). As used in that provision, "State" "includes the District of Columbia." 12 U.S.C. § 1451(k). Plaintiffs concede that the exception

---

[2] Plaintiffs also cite D.C. Code § 2-381.02(a)(1), (3) & (8). See Second Am. Compl. ¶¶ 36-41. All those provisions, however, relate to false claims that result in improper payment by the government to the defendant. Plaintiffs have alleged no facts indicating that such payments occurred. In any case, an action under these provisions would also require defendants' tax exemption claims to be false.

6

for taxes on "real property" is inapplicable because the recordation tax is an excise tax on the privilege of transferring title rather than a tax on real property itself. See Second Am. Compl. ¶ 10; Pls.' Opp'n at 1-2. Plaintiffs contend, however, that the recordation tax nonetheless falls outside the statutory exemption.

"It is well settled that the starting point for interpreting a statute is the language of the statute itself." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 56 (1987) (internal quotation marks omitted). And the language here is sweeping and unambiguous. Fannie Mae and Freddie Mac "shall be exempt from all taxation" imposed by D.C., with a single, narrow exception all agree is inapplicable here. The recordation tax is undoubtedly a form of taxation imposed on the Enterprises. That should be "the end of the matter." Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409 (1993) (internal quotation marks omitted). True, "exemptions from taxation are not to be implied; they must be unambiguously proved," Wells Fargo, 485 U.S. at 354, but Congress created precisely such an "unambiguous[]" exemption here.

Undaunted by the statute's apparent clarity, plaintiffs contend that the Supreme Court's decision in Wells Fargo requires this Court to read "all taxation" to mean only "all direct taxation." Buttressing plaintiffs' arguments, a District Court in the Eastern District of Michigan, while agreeing that "[t]he statutes are broadly worded, and their language is clear and unambiguous," recently held that Wells Fargo compels the conclusion that Fannie Mae and Freddie Mac are subject to excise taxes. See Oakland Cnty. v. FHFA, No. 11-12666, 2012 WL 1658789, at *3 (E.D. Mich. May 11, 2012).

Wells Fargo, however, cannot bear the weight plaintiffs would ascribe to it. There, the Supreme Court considered a provision exempting a certain kind of obligation called Project

Notes from taxation. The Court examined a statute providing that "Project Notes, including interest thereon, shall be exempt from all taxation now or hereafter imposed by the United States." Wells Fargo, 485 U.S. at 355 (alteration and ellipsis omitted). It concluded that executors were obligated to pay an estate tax on Project Notes transferred when the prior owner died. The Court explained that

> an exemption of property from all taxation had an understood meaning: the property was exempt from direct taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed. Underlying this doctrine is the distinction between an excise tax, which is levied upon the use or transfer of property even though it might be measured by the property's value, and a tax levied upon the property itself.

Id. (emphasis added). Because the Wells Fargo provision exempted property from taxation, and because an excise tax like the estate tax is imposed on something other than the property itself, the statutory provision did not reach the estate tax. In other words, the exemption at issue did not match up with the tax imposed.

The statutory provisions at issue in this case, on the other hand, exempt an entity from all taxation. A recordation tax for a deed one of the Enterprises records is indisputably a tax on that entity. It thus falls within the statutory exemption. An example illustrates the difference: if the statute had provided that "Fannie Mae's real property shall be exempt from all taxation," Fannie Mae would still be liable for the recordation tax because it is a tax on the real property's transfer rather than on the real property. But because the statute instead exempts Fannie Mae itself, neither its property nor its activities can be taxed.

Wells Fargo did not mandate an atextual reading of "all taxation"; it simply considered the inherent limitations of exempting property, rather than its owner, from taxation. Indeed, to

8

hold otherwise would contravene Supreme Court case law interpreting language virtually identical to that at issue here. In Bismarck Lumber, the Court considered the following provision:

> That every Federal land bank . . . including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate held, purchased, or taken by said bank [under certain statutory provisions].

Fed. Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 96 n.1 (1941) (internal quotation marks omitted). The Court held that the provision exempted petitioner from sales tax, explaining that "[t]he unqualified term 'taxation' used in section 26 clearly encompasses within its scope a sales tax such as the instant one." Id. at 99. Just as a sales tax is a tax on a federal land bank engaging in a sale, so, too, a recordation tax is a tax on Fannie Mae or Freddie Mac recording a deed. Wells Fargo never cites Bismarck Lumber, let alone purports to overrule it. Hence, Bismarck Lumber, interpreting the tax exemption of an entity rather than of a piece of property, provides the on-point comparison for interpreting the statutes at issue in this case.

Finally, accepting plaintiffs' argument would lead to near absurdity. It would leave the statutory provisions, so sweeping in their language, virtually meaningless: Fannie Mae and Freddie Mac would be free only from capitations and taxes upon personal property, see Murphy v. IRS, 493 F.3d 170, 181 (D.C. Cir. 2007) ("Only three taxes are definitely known to be direct: (1) a capitation, (2) a tax upon real property, and (3) a tax upon personal property." (citation omitted)); accord Nat'l Fed'n of Indep. Bus. v. Sebelius, No. 11-393, slip op. at 41 (U.S. June 28, 2012). The entities' day-to-day operations would be subject to the full panoply of taxation. If that were all Congress meant to accomplish, surely it would have done so with a narrowly phrased provision rather than the sweeping "all taxation" formulation it chose here.

Because the Enterprises are indeed statutorily exempt from the recordation taxes, plaintiffs' action rests on a flawed premise. Plaintiffs have identified no false statements, nor any "obligation to pay" the District that defendants failed to fulfill. See D.C. Code § 2-381.02(a)(7). Therefore, defendants' motion to dismiss all counts of the complaint will be granted.

### 3. Leave to Amend

Plaintiffs urge the court to grant leave to file another amended complaint. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, because no new allegations could cure the complaint's core deficiency, amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962). The Court accordingly will dismiss this case with prejudice.

## IV. Conclusion

For these reasons, defendants' motion to dismiss for failure to state a claim will be granted. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: August 9, 2012